UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: COOK MEDICAL, INC., PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION                                   MDL No. 2440

TRANSFER ORDER

**Before the Panel:** Pursuant to 28 U.S.C. § 1407, plaintiffs in seven actions move to centralize this litigation in the Southern District of West Virginia. Plaintiffs in two actions pending in Alabama support the motion. Common defendants[1] oppose the motion for centralization. Defendant WL Gore & Assoc. (Gore), also named as a defendant in the Middle District of Georgia *Sitten* action, opposes inclusion of the claims against Gore in centralized proceedings and requests severance of those claims and remand to the transferor court. If the Panel deems centralization to be appropriate, Cook suggests centralization in the Middle District of Tennessee or the Southern District of Indiana. At present, the litigation consists of thirteen actions pending in eight districts, as listed on Schedule A and Schedule B.[2]

On the basis of the papers filed and hearing session held, we find that these thirteen actions involve common questions of fact, and that centralization in the Southern District of West Virginia will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. The subject actions share factual issues arising from allegations that defects in surgical products manufactured by Cook to treat pelvic organ prolapse and stress urinary incontinence cause

---

[1] Cook Incorporated, Cook Biotech Incorporated, Cook Medical Incorporated, Cook Group Incorporated, Vance Products Incorporated (d/b/a Cook Urological Incorporated), William A. Cook Australia Pty., Ltd., Cook (Canada), Inc., and Cook Ireland, Ltd. (collectively "Cook").

[2] The motion originally encompassed 42 actions, 27 of which were pending in Southern District of West Virginia. Twenty-five of these 27 actions have been dismissed or no longer name a Cook entity as a defendant, and the remaining two actions already have been transferred to the Southern District of West Virginia as part of another pelvic mesh MDL. Five of the actions encompassed by the motion—listed on Schedule B—have been placed on a conditional transfer order in MDL No. 2326 or MDL No. 2327, which involve allegations of defects in pelvic repair products manufactured by other entities. Cook and Gore have moved to partially vacate the conditional transfer orders in these actions and seek separation and remand of the claims against them. These motions are addressed in separate orders.

In addition to the actions encompassed by the motion, the Panel is aware of eleven additional actions pending against Cook in seven districts. These actions and any other related actions are potential tag-along actions. *See* Panel Rules 1.1(h), 7.1, and 7.2.

injuries to women who are implanted with the products. Centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary. Centralization is consistent with our recent decisions creating separate pelvic repair product MDLs involving defendants American Medical Systems, Inc. (AMS), Boston Scientific Corp. (Boston Scientific), and Ethicon, Inc. (and entities related thereto), *see In re: Am. Med. Sys., Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 844 F. Supp. 2d 1359, 1360 (J.P.M.L. 2012), as well as our earlier decisions in *In re: Avaulta Pelvic Support Sys. Prods. Liab. Litig.*, 746 F. Supp. 2d 1362, 1363 (J.P.M.L. 2010); and our most recent decision in *In re: Coloplast Corp. Pelvic Support Sys. Prods. Liab. Litig.*, 883 F. Supp. 2d 1348, 1348 (J.P.M.L. 2012). In choosing to centralize MDL Nos. 2325 (AMS), 2326 (Boston Scientific), and 2327 (Ethicon) in the Southern District of West Virginia, as it had done in MDL No. 2187 (C.R. Bard, Inc.), the Panel noted that several actions were pending involving plaintiffs who had been implanted with multiple pelvic mesh products manufactured by multiple defendant groups. *See In re AMS*, 844 F. Supp. 2d at 1361 ("it is beneficial in this litigation for a particular action involving claims against multiple manufacturers to remain whole and proceed as one action.").[3]

Opponents of centralization variously argue, *inter alia*, that (1) the unique facts of each individual plaintiff's case will predominate over common facts; (2) the number of related actions does not justify the creation of a new MDL; (3) the parties can informally coordinate the small number of actions pending; and (4) centralization will prejudice Cook and Gore, as they will not be allowed to defend the claims against them in an expeditious manner, because the creation of a new MDL will encourage additional filings by plaintiffs. In its briefs, Cook seeks to distinguish its products from the "pelvic mesh" products at issue in the MDLs already pending in the Southern District of West Virginia. Regardless of whether the Cook products are "pelvic mesh" like the products at issue in the MDLs in West Virginia, there will be overlapping discovery and pretrial proceedings as to the claims against Cook, which are fairly typical of the claims involved in the West Virginia pelvic mesh MDLs. Whether Cook's products are more or less likely to cause injury than those manufactured by other defendant groups is a question of liability more appropriately addressed to the court which oversees those claims. Our inquiry is far more limited. In centralizing MDL Nos. 2325, 2326, 2327, and 2387 in the Southern District of West Virginia, we did not seek to determine whether the products manufactured by each defendant group were similar to any significant degree. Indeed, we chose to keep each MDL as a separate litigation. Rather, we found that the prospect of many multi-product/multi-defendant actions suggested that a single transferee forum for the five MDLs would provide for efficient case management of those actions.

Though these actions present some individual issues of fact, this is usually true of products liability cases and medical device cases, in particular. *See In re: Zimmer Duron Hip Cup Prods. Liab. Litig.*, 717 F. Supp. 2d 1376, 1378 (J.P.M.L. 2010). We find the unique facts presented by individual plaintiffs to be less significant than the fact that these actions share core issues of fact concerning the design, manufacture, testing, and marketing of Cook's pelvic repair products.

---

[3] After consulting with the transferee judge, the Panel determined to assign each multi-product/multi-defendant action to the MDL involving the first-named defendant in that action.

-3-

We are persuaded that the number of pending cases warrants Section 1407 centralization in these circumstances, given that discovery and pretrial proceedings will overlap to a significant degree. While efforts to informally coordinate the pending actions are commendable, transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties. The transferee court can employ any number of pretrial techniques—such as establishing separate discovery and/or motion tracks—to efficiently manage this litigation. In any event, we leave the extent and manner of coordination or consolidation of these actions to the discretion of the transferee court. *See In re: Mut. Funds Inv. Litig.*, 310 F. Supp. 2d 1359 (J.P.M.L. 2004).

Defendants in the past have argued that the creation of an MDL will encourage the filing of numerous meritless actions. *See, e.g., In re: Seroquel Prods. Liab. Litig.*, 447 F. Supp. 2d 1376, 1378 (J.P.M.L. 2006). Indeed, Cook argues here that its products are not as susceptible to causing injury as the products manufactured by defendants in the pelvic mesh MDLs, suggesting that the claims against Cook are weaker than those against other manufacturer defendants. As in *Seroquel*, "[t]he response to such concerns more properly inheres in assigning all related actions to one judge committed to disposing of spurious claims quickly." *Id*.

We conclude that the Southern District of West Virginia is an appropriate transferee district for pretrial proceedings in this litigation. Several multi-product, multi-defendant actions involving Cook products are already before Judge Joseph R. Goodwin in one or more of the pelvic mesh MDLs pending in his court. And some actions on the motion involve products of Cook as well as those of manufacturer defendants in the other pelvic mesh MDLs. Centralization in this district, therefore, will avoid the complications of having these multi-product, multi-defendant cases pending in more than one district. Severance of the claims against Cook and transfer to a different transferee court would run afoul of our previous determination to transfer multi-product, multi-defendant pelvic repair product actions to the MDL involving the defendant first named in the complaint. *See In re: AMS*, 844 F. Supp. 2d at 1361. Transfer of multi-product, multi-defendant cases in their entirety to a new transferee court likely would prejudice the non-Cook defendants named in those actions and almost certainly would disrupt the ongoing pretrial proceedings in the Southern District of West Virginia. Centralization in the Southern District of West Virginia eliminates these complications, and will allow the transferee court to continue the efficient supervision of pretrial proceedings in all related actions.

Defendant Gore argues against inclusion of the claims against it in centralized proceedings in this docket. As Gore is only named in the Middle District of Georgia *Sitten* action, and we have determined in a separate order to transfer that action to MDL No. 2327—denying defendants' motions to partially vacate the conditional transfer order—Gore's arguments regarding the inclusion of *Sitten* in MDL No. 2440 are moot. *See In re: Ethicon*, MDL No. 2327, Transfer Order (J.P.M.L. Jun. 11, 2013).

-4-

IT IS THEREFORE ORDERED that pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A are transferred to the Southern District of West Virginia, and, with the consent of that court, assigned to the Honorable Joseph R. Goodwin for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_____
John G. Heyburn II
Chairman

| | |
|---|---|
| Kathryn H. Vratil | W. Royal Furgeson, Jr. |
| Paul J. Barbadoro | Marjorie O. Rendell |
| Charles R. Breyer | Lewis A. Kaplan |

IN RE: COOK MEDICAL, INC., PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION                          MDL No. 2440

## SCHEDULE A

<u>Middle District of Alabama</u>

Debbie Elliot-Mercer v. Cook Group, Inc. et al., C.A. No.1:13-00096
Deborah G. Nolin, et al. v. Cook Group, Inc., et al., C.A. No. 1:13-00100

<u>Northern District of Alabama</u>

Janice Flannagan, et al. v. American Medical Systems, Inc., et al., C.A. No. 5:13-00311

<u>Eastern District of Kentucky</u>

Brenda L. Smith, et al. v. Cook, Inc., et al., C.A. No. 5:12-00229

<u>District of New Jersey</u>

Patricia Heiser v. Cook Medical, Inc., et al., C.A. No. 1:13-01005

<u>Middle District of Tennessee</u>

Alice J. Johnson v. Cook, Inc., et al., C.A. No. 3:12-01153
Sheila Mansfield v. Cook, Inc., et al., C.A. No. 3:12-01252
Sarah Ruth Dunnington, et al. v. Cook, Inc., et al., C.A. No. 3:13-00014

IN RE: COOK MEDICAL, INC., PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION                                    MDL No. 2440

## SCHEDULE B

<u>Northern District of Alabama</u>

Patricia Connell v. Cook Group Inc., et al., C.A. No. 3:13-00274
Linda Pickard, et al. v. Boston Scientific Corporation, et al., C.A. No. 6:13-00308

<u>Middle District of Florida</u>

Carol Sciarro v. Cook Group, Inc., et al., C.A. No. 6:13-00170

<u>Middle District of Georgia</u>

Rebecca A. Sitten, et al. v. Johnson and Johnson, et al., C.A. No. 5:13-00045

<u>District of Montana</u>

Marilyn M. Pittsley, et al. v. Johnson & Johnson, et al., C.A. No. 9:12-00196